**WO**                                                                                           JDN

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Carlos Arthur Powell,                        )    No. CV 03-1819-PHX-JAT
                                             )
       Plaintiff,                        )    **ORDER**
                                             )
vs.                                          )
                                             )
C. Miles, et al.,                            )
                                             )
       Defendants.                       )
                                             )
_____)

     Plaintiff, an inmate in the custody of the Federal Correctional Institution (FCI) in Adelanto, California, filed this civil rights action[1] against the following Defendants from the Eloy Detention Center in Eloy, Arizona: (1) Cora Miles, Corrections Corporation of America (CCA) Unit Manager; (2) Joe Gluch, CCA Regional Director; (3) Stella Ponce, Chief Security Officer; (4) Seferino Talamantes, Correctional Officer/Court Bailiff; (5) Timothy Cason, Correctional Officer/Court Bailiff; and (6) Earl Scalet, INS Investigator (Second Am. Compl. (PSAC), Doc. #145). Before the Court are a summary judgment motion filed by Defendants Miles, Gluch, Ponce, Talamantes, and Cason, and a Motion to Dismiss Scalet as a defendant (Doc. ##165, 187). Also pending are Defendants' motions to strike both Plaintiff's sur-response to the summary judgment reply, and Plaintiff's sur-response to Defendants' reply supporting the Motion to Dismiss (Doc. ##181, 191). The Court will deny

---

    [1]Plaintiff's claim is brought pursuant to <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).

1   both motions to strike, grant summary judgment for Gluch, Ponce, Talamantes, and Cason,

2   deny summary judgment as to Miles, and deny Scalet's motion for dismissal.

**I. Background**

Plaintiff's Second Amended Complaint sets forth three claims: (1) retaliation for providing legal assistance to other inmates; (2) threat to safety during an INS hearing; and (3) violations of due process in disciplinary proceedings (PSAC, Doc. #145). These claims arose in 2003 during Plaintiff's confinement at the Eloy Detention Facility in Eloy, Arizona (Id. at 1). While housed in Eloy, Plaintiff often assisted other inmates with grievances and legal work (Pl. Dep. 27, May 21, 2004, Ex. 1, Doc. #165). Plaintiff asserts that on August 5, 2003 he assisted another inmate (Salvador) in drafting a grievance on an INS form for submission to Scalet, an INS Investigator (PSAC at 4a; Pl.'s Aff. ¶ 9, Ex. 1, Doc. #170). This grievance raised an equal protection claim and questioned why the detainer for another inmate (Garcia-Ibarra) had been lifted and why that inmate had been given an outside gate pass (Pl.'s Statement of Facts (PSOF) ¶ 6, Doc. #170). Plaintiff also filed his own grievance on August 8, 2003 complaining about the lack of shower curtains in his dorm (Ex. 1, Doc. #170).

On August 14, 2003, Plaintiff was placed in the Special Housing Unit (SHU), which is the segregated unit within the detention center (PSAC at 4b). He states that he was not told why he was being locked up. The following day, Warden Garcia and Miles interviewed Plaintiff, and Plaintiff alleges that they showed him Salvador's August 5 grievance addressed to INS and asked him if he had seen it[2] (Id.; Defs.' Statement of Facts (DSOF) ¶ 7, Doc. #166 (in part)). Plaintiff states that, after responding affirmatively, the two officers accused him of charging for legal assistance and said they would investigate the matter (DSOF ¶ 7; Pl.'s Aff. ¶ 6, Doc. #170). Plaintiff purports that he has never charged inmates for legal assistance, but two other inmates, Garcia-Ibarra - the subject of the INS form - and Navarro, were selling his legal work (DSOF ¶ 2; Pl.'s Aff. ¶ 3(f)). Plaintiff alleges that Defendants

---

[2]The Court granted Plaintiff's motion to dismiss Warden Garcia as a defendant in May 2004 (Doc. #27).

retaliated against him for providing legal assistance to Salvador by (1) placing him in SHU and (2) leaking information to Garcia-Ibarra that Plaintiff had "snitched" on him (PSAC at 4b).

In Count II Plaintiff alleges that his safety was threatened during an INS court proceeding when he was put in a courtroom with seven general population inmates, including Garcia-Ibarra (Id. at 5). He claims that Defendants' actions violate regulations prohibiting any general population inmates from coming in contact with SHU inmates (Id.). And in his last claim, Plaintiff asserts that he filed grievances putting Gluch on notice that incident reports filed by Miles included false information, and that Defendants' actions concerning his segregation were retaliatory (Id. at 6h). Plaintiff alleges that, despite knowing this information, Gluch violated Plaintiff's procedural due process rights by ignoring the retaliation and threats to Plaintiff's safety. Plaintiff further alleges that Gluch's failure to train contributed to Defendants' alleged constitutional violations (Id.).

Defendants moved for summary judgment arguing that Plaintiff was placed in SHU for his own safety, and they claim that Plaintiff turned himself in for protective custody (DSOF ¶¶ 9, 12, 17, 25, Doc. #166). Further, Defendants claim that Plaintiff was put into SHU for various rule violations (Id. ¶¶ 27, 28, 29). Defendants also assert that Miles never made statements about Plaintiff being a snitch (Id. ¶ 33). Regarding Count II, Defendants contend that Plaintiff was with correctional officers during his escort to the INS hearing and throughout the hearing itself; thus, Plaintiff was never in danger from attacks and there was no threat to his safety (Defs.' Mot. for Summ. J. (DMSJ) at 7-8, Doc. #165; DSOF ¶ 35). Finally, Defendants contend that in Count III Plaintiff failed to connect Gluch to the alleged misconduct, and Plaintiff failed to allege any liability under Monell because there is no allegation of a policy that caused the claimed violations (DMSJ at 10).

In his response to the motion Plaintiff asserts that Defendants disclosed his name to inmates in retaliation for helping Salvador draft the August 5, 2003 grievance (Pl.'s Resp. at 2, Doc. #170). According to evidence submitted by Plaintiff, the grievance led to the refiling of a detainer on Garcia-Ibarra and the loss of his gate pass (Salvador Aff. ¶ 6,

1    Prymych Aff. ¶ 9, Doc. #170).  Plaintiff alleges that Miles told inmates in SHU that Plaintiff

2    had snitched against her and Garcia-Ibarra; thus, putting Plaintiff's safety in jeopardy and

3    thereby necessitating continued segregation in SHU (Pl.'s Aff. ¶ 11).   In their reply,

4    Defendants argue that Plaintiff failed to submit any evidence to support his allegations

5    (Reply at 2, Doc. #176).  Specifically, Defendants contend that Plaintiff did not provide any

6    specific facts demonstrating a retaliatory scheme (Id. at 5).  Plaintiff then filed a sur-response

7    - which Defendants subsequently moved to strike - arguing that Defendants' explanation for

8    Plaintiff's segregation has changed over time, giving rise to a question of material fact

9    (Rebuttal at 2, Doc. #180).

10   **II.  Standard for Summary Judgment**

11           A court must grant summary judgment if the pleadings and supporting documents,

12   viewed in the light most favorable to the non-moving party, "show that there is no genuine

13   issue as to any material fact and that the moving party is entitled to judgment as a matter of

14   law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

15   Under summary judgment practice, the moving party bears the initial responsibility of

16   presenting the basis for its motion, and identifying those portions of the record, together with

17   affidavits, which it believes demonstrate the absence of a genuine issue of material fact.

18   Celotex Corp., 477 U.S. at 323.  If the moving party meets its initial responsibility the burden

19   then shifts to the opposing party who must demonstrate that the fact in contention is material,

20   i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v.

21   Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the

22   evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

23   at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  The

24   opposing party need not establish a material issue of fact conclusively in its favor; it is

25   sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

26   parties' differing versions of the truth at trial."  First Nat'l Bank of Arizona v. Cities Serv.

27   Co., 391 U.S. 253, 288-89 (1968).  Finally, when considering a summary judgment motion,

28

1    the evidence of the non-movant is "to be believed, and all justifiable inferences are to be

2    drawn in his favor." Anderson, 477 U.S. at 255.

3    **III.  Count I - Retaliation**

4        To meet their burden on summary judgment, Defendants must come forward with the

5    lack of a triable issue of fact; namely, evidence that Plaintiff was not placed in SHU on

6    August 14, 2003 in retaliation, and evidence that Plaintiff's name was not leaked in

7    retaliation for a grievance he helped draft.  A viable claim of First Amendment retaliation

8    contains five basic elements: (1) an assertion that a state actor took some adverse action

9    against an inmate (2) because of (3) that prisoner's protected conduct and that such action

10   (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered

11   more than minimal harm) and (5) was not narrowly tailored to advance a legitimate

12   correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-58 (9th Cir. 2005); see also Hines

13   v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate must show

14   (1) that the prison official acted in retaliation for the exercise of a constitutionally-protected

15   right, and (2) that the action "advanced no legitimate penological interest").

16       **A.  First Amendment**

17       Prisoners have a constitutionally-protected right to file grievances and to pursue civil

18   rights litigation without retaliation.  Rhodes, 408 F.3d at 567; see also Hines, 108 F.3d at 267

19   (prisoner may not be retaliated against for use of grievance system); Bradley v. Hall, 64 F.3d

20   1276, 1279 (9th Cir. 1995) (prisoner may not be penalized for exercising the right of redress

21   of grievances).  A prisoner may not be penalized for the contents of a grievance, Bradley, 64

22   F.3d at 1279, nor may a prisoner be labeled a "snitch" in retaliation for filing grievances,

23   Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir.1989).  Because harm that is more

24   than minimal will always have a chilling effect, an inmate need not expressly allege a

25   chilling effect to have a viable claim of First Amendment retaliation.  Rhodes, 408 F.3d at

26   568 n. 11; Valandingham, 866 F.2d at 1138.  And a chilling effect on a prisoner's

27   constitutional right to file grievances is sufficient to raise a retaliation claim against prison

28   officials.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

1    An inmate retains some First Amendment rights to assist other inmates with litigation.

2    <u>See</u> <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974); <u>Johnson v. Avery</u>, 393 U.S. 483, 490

3    (1969); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985);  <u>see also</u> <u>Lewis v. Casey</u>, 518

4    U.S. 343, 351 (1996).  There may be limitations on these activities, however, any restrictions

5    must be reasonably related to legitimate penological interests.  <u>See</u> <u>Shaw v. Murphy</u>, 532

6    U.S. 223, 231-32 (2001).  Plaintiff cites to 28 C.F.R. § 542.16(a) as support for his federally

7    protected right to assist other inmates with grievances without repercussion; "[a]n inmate

8    may obtain assistance from anther inmate or from institution staff in preparing a Request or

9    an Appeal."   Defendants do not expressly challenge whether Plaintiff was engaged in

10    protected conduct; therefore, it is undisputed that the first element of a retaliation claim is

11    satisfied (<u>See</u> DMSJ 2-5, Doc. #165).

12    **B. Defendants' Motion**

13    Defendants seek summary judgment on the basis that (1) they did not retaliate against

14    Plaintiff, (2) Plaintiff was placed in SHU for violating institutional rules and for his own

15    safety, and (3) they did not label Plaintiff a snitch (DMSJ at 7, DSOF ¶ 12).

16    Defendants contend that they placed Plaintiff in segregation because he violated

17    institutional rules.  Defendants proffer three incident reports documenting the unauthorized

18    receipt of money, an unauthorized phone call, and the unauthorized possession of other

19    inmates' pre-sentence reports (Exs. 3-5, Doc. #165).  In her affidavit, Miles states that

20    Plaintiff was initially placed in SHU during an investigation of whether Plaintiff was

21    charging for legal work (Miles Aff. ¶ 6, Doc. #165).  Segregating inmates who violate

22    institutional rules or pose a threat to the security of the prison serves a legitimate correctional

23    goal.

24    Miles also attests that she never indicated that Plaintiff was a snitch, nor did she call

25    him a snitch in front of others (<u>Id.</u> ¶¶ 9, 24).  Miles asserts that when she interviewed Garcia-

26    Ibarra, he threatened Plaintiff in her presence.  Further, Miles states that during an

27    investigation  concerning the INS form implicating Garcia-Ibarra as a felon who should be

28    deported, inmates learned that Plaintiff had submitted the form (<u>Id.</u> ¶¶ 12, 23).  Miles affirms

that, due to the threat, she placed Plaintiff in SHU to prevent him from being harmed (Id. ¶ 15).

It is undisputed that an inmate who has been labeled a snitch is subject to serious harm. Valandingham, 866 F.2d at 1138-39. Moreover, "officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). As such, if Defendants knew that Plaintiff had been threatened or labeled a snitch, placing him in segregation served the legitimate penological purpose of maintaining the security and safety of inmates. Defendants have met their initial burden of presenting the basis of their motion and submitted evidence they believe shows the absence of a genuine issue of material fact.

**C. Plaintiff's Response**

The burden shifts to Plaintiff to offer evidence from which an inference can be drawn that Defendants retaliated against him for his part in drafting the grievance either by placing him in SHU, or by labeling him a snitch. Plaintiff also bears the burden of demonstrating that Defendants' conduct served no legitimate correctional goal. Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995). Plaintiff has sufficiently made this showing with respect only to Miles.

***1. Plaintiff's Assistance with the INS Grievance***

Plaintiff proffered evidence demonstrating that Miles knew he drafted the grievance concerning Garcia-Ibarra's detainer and gate pass. In an affidavit, inmate Salvador attests that on August 14, 2003 Miles questioned him and showed him the INS form that Plaintiff helped him draft (Salvador Aff. ¶¶ 3-4, Doc. #170). Salvador asserts that Miles told him that she knew Salvador did not draft the document and she asked him to substantiate that Plaintiff had actually drafted it in order to get Garcia-Ibarra put on detainer. There is no evidence that Miles was unaware that Plaintiff had drafted the grievance, in fact, she attests that Garcia-Ibarra threatened Plaintiff "because Plaintiff caused a detainer to be placed on Garcia-Ibarra by the INS" (Miles' Aff. ¶ 12, Doc. #165). She goes on to state that during the course of her investigation of the INS forms, inmates learned that Plaintiff had drafted the grievance (Id.

1  at 23).  Plaintiff has demonstrated that Miles had a belief that Plaintiff assisted in the drafting
2  of the INS form.

3            ***2. Rule Violations***

4            Plaintiff submitted evidence that he did not violate rules prior to his placement in
5  SHU; thus, raising a question as to the timing of his segregation shortly after the submission
6  of the INS form concerning Garcia-Ibarra.  "[T]iming can properly be considered as
7  circumstantial evidence of retaliatory intent."  Bruce, 351 F.3d at 1288 (quoting Pratt, 65
8  F.3d at 808).  Plaintiff's evidence demonstrates that prior to August 14, 2003, he did not
9  receive any incident reports for rule violations[3] (Garcia Resp. to Interrog. #2, Ex. B, Pl.'s
10 Rebuttal, Doc. #180).  Plaintiff notes that the incident reports submitted by Defendants are
11 all dated *after* his placement in SHU (Exs. 4-6, DMSJ, Doc. #165).  There is no evidence
12 indicating that Plaintiff was investigated for rule violations before he was segregated.  Thus,
13 there is no evidence that Defendants formed a belief that Plaintiff had violated prison rules
14 before they placed him in the SHU.

15           ***3. Legitimate Penological Goals for SHU Placement***

16           As stated in the foregoing, prisons have a legitimate penological interest in
17 segregating inmates for disciplinary purposes, and to protect the safety of inmates who are
18 threatened or labeled a snitch.  Prisons may not, however, use segregation to punish an
19 inmate for exercising his right to assist others with grievances.  See Bruce, 351 F.3d at 1289.
20 The Ninth Circuit has held that, "prison officials may not defeat a retaliation claim on
21 summary judgment simply by articulating a general justification for a neutral process, when
22 there is a genuine issue of material fact as to whether the action was taken in retaliation . . ."
23 Id.  Plaintiff contends that Defendants' inconsistent statements concerning the reason for his
24 initial placement in SHU create a genuine disputed issue of material fact.

25  _____

26           [3]Plaintiff's evidence is attached to a sur-response, which Defendants move to strike
    on various grounds (Doc. #181).  But the Court finds that the sur-response is not redundant
27  or immaterial as Defendants allege, and the affidavits to which Defendants object are sworn
    and notarized.  The Court also recognizes Plaintiff's pro se status, and will therefore deny
28  Defendants' motion to strike.  See Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

1    Miles states in her affidavit that Plaintiff was initially placed in SHU during the
2    investigation of whether Plaintiff charged for legal work (Miles' Aff. ¶ 6, Doc. #165).  But
3    when asked in interrogatories whether anyone had alleged that Plaintiff charged for legal
4    work, Miles responded that at no time did "anyone specifically bring Plaintiff's name to her
5    attention regarding the above-referenced allegations" (Miles' Resp. to Interrog. #6, Doc.
6    #170).  Miles declared in her affidavit that *she* had Plaintiff segregated to prevent him from
7    harm after she learned of threats to his safety; specifically, Garcia-Ibarra threatened Plaintiff
8    in her presence and he advised her that something may happen to Plaintiff (Miles' Aff. ¶¶ 15,
9    12, 23).  But in her response to admissions, Miles states that she did not make the decision
10   regarding Plaintiff's segregation, and that Plaintiff's placement in SHU was initiated through
11   Warden Garcia as a result of the investigation into the allegations contained in the INS
12   grievance (Miles' Resp. to Admis. ## 1-2, Doc. #170).  And when directly asked whether the
13   August 14, 2003 lock-up of Plaintiff was due to information from Garcia-Ibarra, Miles
14   responded that her actions on August 14 were *not* a result of any information obtained from
15   Garcia-Ibarra (Miles' Resp. to Interrog. #14).

16   Plaintiff argues that he could not have been put in SHU based on a threat to his safety
17   because the threat came during the interview with Garcia-Ibarra, which occurred after
18   Plaintiff was put in segregation (Mem. at 3, PSAC; Pl.'s Resp. at 4).  Defendants appear to
19   support Plaintiff's claim in their own motion by explaining that, "[a]fter Plaintiff was placed
20   in SHU and during the course of the investigation comments were made by other inmates
21   with regard to the personal safety of Powell" (DMSJ at 4).  This contention contradicts some
22   of Miles' own statements indicating that the threat to Plaintiff's safety came before - and was
23   the reason for - Plaintiff's segregation.  However, it supports other, conflicting evidence
24   suggesting that Plaintiff was initially segregated due to either an investigation that he charged
25   for legal work, or an investigation into the INS grievance.  On the record, it is unclear
26   whether the threat from Garcia-Ibarra preceded or followed Plaintiff's placement in SHU.

27   On a summary judgment motion, the moving party's evidentiary burden is merely to
28   provide a reference to those materials on file that support their belief that there exists no

1   genuine issues of material fact.  <u>Musick v. Burke</u>, 913 F.2d 1390, 1394 (9th Cir. 1990).

2   While Defendants may have initially presented a basis for their motion, a broader

3   examination of the record reveals inconsistencies which undermine Defendants' claim that

4   there are no issues of material fact.  If anything, Defendants' contradictory explanations for

5   why Plaintiff was placed in SHU on August 14, 2003, only bolster Plaintiff's assertion that

6   it was for retaliation.  The Court therefore finds that there is a genuine issue of material fact

7   concerning whether Miles segregated Plaintiff for retaliatory purposes.

8          ***4.  Snitch Label***

9          Four inmates signed affidavits stating that Miles told them directly that Plaintiff was

10  a snitch (Salvador Aff. ¶ 6; Chavez Aff. at 1; Prymych Aff. ¶ 9; Camacho-Garcia Aff. ¶ 2,

11  Doc. #170).  Three also aver that they observed Miles tell other inmates that Plaintiff was a

12  snitch (Salvador ¶ 8; Chavez Aff.; Prymych Aff. ¶7).  Plaintiff filed his own affidavit stating

13  that Miles called him a snitch, and that he saw her tell other inmates in SHU that "he was

14  snitch against her and Ibarra" (Pl. Aff. ¶¶ 6, 11, Doc. #170).  Inmates further attest that Miles

15  asked them, or they observed Miles solicit other inmates, for statements that Plaintiff sought

16  to charge them for legal assistance, and they stated that she asked for legal documents from

17  various inmates (Sotelo Aff. ¶¶2-3; Prymych Aff. ¶7).  Finally, Plaintiff states that he was

18  informed by Miles that he was put in SHU because he filed a grievance to INS (Pl.'s Aff.

19  ¶ 7).

20         Defendants argue that, even if Plaintiff's allegations that Miles labeled him a snitch

21  were true, since he was in SHU there was no threat to his safety and the only claim Plaintiff

22  may have is defamation (DMSJ at 9, Doc. #165).  But as previously noted, labeling an inmate

23  a snitch has the potential for serious harm and may violate constitutional guarantees.  As

24  such, there is no legitimate penological reason for identifying a prisoner as a snitch, even if

25  he is already in segregation.  As Plaintiff expressed in his deposition, a snitch label can

26  follow an inmate to other institutions, so even if Plaintiff is transferred his safety may remain

27  in jeopardy (Pl.'s Dep. 67-68, Ex. 1, Doc. #165).  On summary judgment, the Court does not

28  determine the truth of the matters asserted but only determines whether there is a genuine

1   issue of material fact that must be resolved by trial.  See Summers v. A. Teichert & Son, Inc.,
2   127 F.3d 1150, 1152 (9th Cir. 1997).  Plaintiff has provided more than a "scintilla of
3   evidence" that Miles told other inmates that Plaintiff was a snitch.  See Addisu v. Fred
4   Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that
5   is merely colorable or not significantly probative does not present a genuine issue of material
6   fact" precluding summary judgment).

7          The Court finds that there is sufficient causal connection between Miles' conduct and
8   Plaintiff's claim of retaliation.  A reasonable trier of fact could infer, if there were no rule
9   violations or previous threats to Plaintiff's safety that justified SHU placement on August 14,
10  2003, that Miles either segregated Plaintiff for no legitimate penological reason, and/or that
11  she intentionally labeled Plaintiff a snitch.  Accordingly, the Court finds that a genuine issue
12  of material fact exists as to whether Miles retaliated against Plaintiff, precluding summary
13  judgment as to her.

14         **D. Defendant Ponce**

15         While Plaintiff has met his burden to set forth specific facts as to Miles' affirmative
16  role in the alleged retaliation, he has not demonstrated that Ponce was in any way linked to
17  the alleged violation.  State officials are subject to suit under § 1983 only if "they play an
18  affirmative part in the alleged deprivation of constitutional rights."  King v. Atiyeh, 814 F.2d
19  565, 568 (9th Cir. 1987).  To state a § 1983 claim, a plaintiff must allege that he suffered
20  specific injury as a result of the specific conduct of a defendant, and show an affirmative link
21  between the injury and that conduct.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

22         Plaintiff argues that Ponce was the official who initially put him in SHU and informed
23  him that the placement was because "probably you have filed something they didn't
24  appreciate and caused problems" (Pl.'s Resp. at 11, Doc. #170).  Plaintiff claims that since
25  Ponce knew that the lock up was for grievances, Ponce is liable for the alleged retaliation.
26  No other evidence is submitted concerning this Defendant.  The alleged conduct by Ponce -
27  physically placing Plaintiff in segregation - is part of Ponce's regular duties as a prison
28  official.  Consequently, this bare allegation that Ponce was part of a retaliatory scheme

1    because she allegedly knew that the placement was in response to a grievance, is insufficient

2    to connect her to the alleged constitutional violation.  There is no indication that Ponce was

3    the person who made the decision to place Plaintiff in SHU, so her conduct could not be

4    considered retaliatory as she was following orders from another prison official.  Summary

5    judgment will therefore be granted for Ponce on Count I.

6    **IV. Count II - Threat to Safety**

7         Prison officials must take reasonable steps to ensure the safety of inmates.  <u>See</u>

8    <u>Farmer</u>, 511 U.S. at 833.  A failure to protect claim lies when officials act with "deliberate

9    indifference" to the threat of serious harm or injury by another prisoner.  <u>See</u> <u>Hoptowit v.</u>

10   <u>Ray</u>, 682 F.2d 1237, 1250 (9th Cir. 1982).  To show deliberate indifference, a plaintiff must

11   show that prison officials knew of and disregarded an excessive risk to inmate safety.

12   <u>Farmer</u>, 511 U.S. at 837.  Although this standard does not require that a guard know with

13   "moral certainty" that an inmate is in danger, the guard must have more that a mere suspicion

14   that violence will occur.  <u>Berg v. Kincheloe</u>, 794 F.2d 457, 459 (9th Cir. 1981).  To prove

15   knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very

16   obviousness of the risk may be sufficient to establish knowledge.  <u>See</u> <u>Farmer</u>, 511 U.S. at

17   842; <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995).

18        Defendants move for summary judgment on Count II on the basis that because there

19   was continuous security provided during the INS hearing, there is no evidence of a wanton

20   disregard for Plaintiff's safety (Doc. #165).  They further argue that Plaintiff's failure to

21   establish an actual injury entitles Defendants to summary judgment.  In support, Defendants

22   submit the affidavits of Talamantes, the officer who escorted Plaintiff to the courtroom, and

23   Cason, the officer who stood in the courtroom with Plaintiff during the entire proceeding

24   (Exs.6 & 7, Doc. #165).  According to their statements, there was no contact with general

25   population inmates, an officer was within five feet of Plaintiff at all times, and there were

26   four officers stationed in the courtroom at all times (Talamantes Aff. ¶¶ 3, 7, 11, 14; Cason

27   Aff. ¶¶ 5, 8, 10-11, Doc. #165).

28        In his response, Plaintiff rejects the two officers' claims that they were in the

1   immediate area at all times, and argues that since he was cuffed and shackled he had no way

2   to protect himself against a substantial risk of serious harm (Resp. at 11-12, #170).  He also

3   identifies inaccuracies in the two affidavits regarding the number of prisoners who were

4   actually in the courtroom for the hearing (Id. at 12).

5       The Court finds that Plaintiff has not demonstrated that there exists a genuine issue

6   of material fact as to whether Talamantes and Cason acted with deliberate indifference to a

7   serious threat of harm to Plaintiff.  Plaintiff does not identify the alleged rule which prohibits

8   general population inmates to be near SHU inmates, nor has he established that Defendants

9   had reason to suspect that he was in danger in the courtroom.  There is also no evidence that

10  Plaintiff alerted either Defendant to a potential risk of harm.   Depending on the

11  circumstances, it may have been unwise on the part of Defendants to allow Garcia-Ibarra to

12  be in the same courtroom with the inmate he allegedly threatened, but this carelessness does

13  not rise to deliberate indifference.  Summary judgement will be granted for Talamantes and

14  Cason, and on Count II.

15  **V. Count III - Disciplinary Proceedings**

16      There is no *respondeat superior* liability under § 1983, so a defendant's position as

17  the supervisor of a person who allegedly violated a plaintiff's constitutional rights does not

18  impose liability.  Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Taylor v. List, 880

19  F.2d 1040, 1045 (9th Cir. 1989).  "A supervisor  is only liable for constitutional violations

20  of his subordinates if the supervisor participated in or directed the violations, or knew of the

21  violations and failed to act to prevent them."  Taylor, 880 F.2d at 1045.  Moreover, an inmate

22  has no free-standing constitutional right to a grievance process.  In Mann v. Adams, 855 F.2d

23  639, 640 (9th Cir. 1988), the Ninth Circuit held that a prisoner does not have a protected

24  liberty interest in prison grievance procedures.  Without a liberty interest, Plaintiff has no

25  procedural due process rights at stake.  Further, the mere denial of a grievance does not give

26  rise to the inference of active unconstitutional behavior.  Where a defendant's only

27  involvement in the allegedly unconstitutional conduct is the denial of administrative

28  grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional

1   behavior does not amount to active unconstitutional behavior for purposes of § 1983. Shehee
2   v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999).

3       There is no evidence to show that Gluch participated in or directed the alleged
4   constitutional violations. Plaintiff's allegations that Gluch failed to properly investigate his
5   grievances, and that he "deliberately concurr[ed]" with Defendants in the grievance process
6   are insufficient to demonstrate that a factual dispute exists as to Gluch's liability for a
7   constitutional violation. The Court will grant summary judgment on Count III and for Gluch.

8   **VI. Damages**

9       Defendants argue that Plaintiff cannot make the proper showing to recover punitive
10  damages (DMSJ at 12, Doc. #165). They also claim that Plaintiff cannot seek redress for
11  emotional distress because he has not shown any physical injury (Id. at 13).

12      A jury may award punitive damages under § 1983 either when a defendant's conduct
13  is driven by evil motive or intent, or when it involved a reckless or callous indifference to the
14  constitutional rights of others. Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005) (quotation
15  omitted).  The Ninth Circuit has held that a § 1983 victim is "entitled to recover
16  compensatory damages for all injuries suffered as a consequence of those deprivations"
17  according to general tort principles applicable to the type of deprivation proved. Borunda
18  v. Richmond, 885 F.2d 1384, 1389 (9th Cir. 1989). This may include "compensation for
19  economic harm, pain and suffering, and mental and emotional distress that results from the
20  violations." Id.

21      The Court finds that on the question of retaliation against Plaintiff, there are sufficient
22  facts from which a reasonable jury could infer that the punitive and compensatory damages
23  standard was met. Defendants' request for summary judgment on this point will be denied.

24  **VII. Motion to Dismiss Scalet**

25      In his Second Amended Complaint Plaintiff alleges that Scalet participated in
26  retaliation against Plaintiff after Scalet received the INS form that Plaintiff assisted another
27  inmate in drafting (PSAC at 4a, Doc. #145). Scalet did not answer this claim. Instead, he
28  filed a Motion to Dismiss on the basis that Plaintiff failed to effect timely service as required

- 14 -

1  under the rules of procedure (Doc. #187).[4]

2        Incarcerated pro se plaintiffs proceeding in forma pauperis are entitled to rely on the

3  U.S. Marshal for service of summons and complaint and cannot be penalized by dismissal

4  of the action for failure to effect service where the Marshal has failed to perform his duties.

5  Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994) (quoting Puett v. Blandford, 912 F.2d

6  270, 273 (9th Cir. 1990)), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472

7  (1995).  As long as the prisoner provides the information necessary to identify the defendant,

8  the Marshal's failure to effect service is automatically good cause within the meaning of Fed.

9  R. Civ. P. 4(j).  Walker, 14 F.3d at 1422 (quoting Sellers v. United States, 902 F.2d 598, 603

10 (7th Cir. 1990)).

11       Plaintiff submits that after filing the original Complaint he provided to the Marshal

12 the address of the Eloy Detention Center at 1705 East Hanna Road in Eloy, Arizona, as the

13 location to serve Scalet (Pl.'s Aff. ¶ 7, Attach. 1, Doc. #188; Doc. #16).  The record shows

14 that the Marshal executed service via certified mail to Jacque Hahn, District Counsel for the

15 Department of Homeland Security, who signed for receipt of the summons for the original

16 Complaint, and again for the First Amended Complaint (Doc. ##16, 51).  But Scalet had not

17 filed a waiver of service, and it is unclear whether Hahn was authorized to accept service for

18 Scalet.  Plaintiff's Second Amended Complaint was filed on November 28, 2005 (Doc.

19 #145).  The summons for Scalet was returned unexecuted on January 27, 2006, and it was

20 noted by the Marshal that Scalet no longer worked at the address provided, which was the

21 detention center on East Hanna Road in Eloy, Arizona (Doc. #167).  However, according to

22 Scalet's declaration, he was assigned to the Eloy Detention Center from March 2001 to

23 February 2006 (Scalet Decl. at 1, Attach 1, Doc. #187).  In an Order dated March 16, 2006,

24 the Court acknowledged that Scalet had not yet been personally served in this action, and

25

26 _____

27      [4]Scalet also filed a Motion to Strike Plaintiff's sur-response to this motion, referred
   to as a "traverse" to Defendant's reply (Doc. ##191, 190).  The Court will grant the Motion
28 to Strike to the extent that it will not consider Plaintiff's sur-response, but will otherwise
   deny the motion.

1   ordered Scalet's employer to provide his address (Doc. #174).   Upon receipt of this

2   information, the Court ordered service on Scalet within ten days, which was completed (Doc.

3   #179).

4          Under Federal Rule of Civil Procedure 4(m), if a summons and complaint are not

5   served upon a defendant within 120 days after filing, the court shall either dismiss the action

6   or, if the plaintiff shows good cause for the failure, direct that service be effected within a

7   specified time.   Pursuant to this rule, on April 3, 2006 the Court ordered service on Scalet

8   (Doc. #179).   The Court must provide reasonable time for service of the United States after

9   the plaintiff has served the individual government employee in an individual capacity.   Fed.

10  R. Civ. P. 4(i)(3)(B).   The summons and Second Amended Complaint were served upon the

11  United States Attorney General and the local United States Attorney for the District of

12  Arizona the following month as directed by the Court (Doc. ##185, 186, 184).

13         Scalet contends that timely service of an amended complaint is ineffective for a

14  defendant who was named in the original complaint but was not timely served the original

15  complaint.   This argument is unpersuasive.   The out-of-circuit case law upon which Scalet

16  relies refers to various factors in determining whether service should be considered effective.

17  See Patterson v. Brady, 131 F.R.D. 679, 682-84 (S.D.Ind. 1990), aff'd 89 F.3d 838 (7th Cir.

18  1996); Del Raine v. Carlson, 826 F.2d 698, 704-05 (7th Cir. 1987).   When these factors are

19  applied to the present action, the case law supports a finding of effective service.   First,

20  Scalet has had knowledge of this action since December 2003 (Scalet Decl. at 2, Doc. #187).

21  Second, Plaintiff acted diligently in that he initially provided the proper information to the

22  Marshal, and when Scalet's whereabouts were finally ascertained by Court Order, Plaintiff

23  timely complied with the orders to serve Scalet and the United States.   Further, Plaintiff has

24  prosecuted this action pro se from the beginning.   See Borzeka v. Heckler, 739 F.2d 444,

25  446-48 (9th Cir. 1984).   And finally, the lack of effective service of the original complaint

26  cannot be attributed to Plaintiff because he did provide the Marshal with the correct location

27  of Scalet.   See Whale v. U.S., 792 F.2d 951, 953 (9th Cir. 1986).

28         In sum, Plaintiff has shown good cause why the action against Defendant Scalet

1   should not be dismissed. The Court finds that Scalet was personally served pursuant to the

2   Court's Order dated April 3, 2006, and the United States was served in a reasonable time

3   therefrom.  The Court will deny the Motion to Dismiss Scalet as a defendant in this action.

4   **VIII.  Conclusion**

5          The Court finds that a genuine issue of material fact does not exist as to the liability

6   of Defendant Ponce, and she will be granted summary judgment.  However, because the

7   Court finds that a material issue of fact exists regarding Plaintiff's retaliation claim against

8   Miles, the Court will deny summary judgment for Count I against Miles, and as to damages

9   on this claim.  The Court further finds that a genuine issue of material facts does not exist

10  concerning Count II or Count III of the Second Amended Complaint and summary judgment

11  for those Counts, and for  Defendants Talamantes, Cason, and Gluch will be granted.

12  Finally, the Court finds that there was effective service of Defendant Scalet and will deny the

13  motion to dismiss him as a defendant.

14

15  **IT IS ORDERED:**

16         1) Defendants' Motion for Summary Judgment (Doc. #165) is **granted** in part and

17  **denied** in part.  The Motion is granted for Defendants Ponce, Talamantes, Cason, and Gluch,

18  and as to the threat to safety claim (Count II) and the disciplinary proceedings claim (Count

19  III).  The Motion is otherwise **denied**.

20         2) Defendants' Motion to Strike Plaintiff's Rebuttal to Defendants' Reply (Doc. #181)

21  is **denied**.

22         3) Defendant Scalet's Motion to Dismiss (Doc. # 187) is **denied**.

23  //

24  //

25  //

26  //

27  //

28  //

1        4) Defendant Scalet's Motion to Strike (Doc. #191) is **denied.**

2        5) The remaining claim is Count I against Defendants Miles and Scalet.

3              DATED this 30th day of August, 2006.

4

5

6

7                                    _____
                                       James A. Teilborg
8                                      United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28